## Case No. 16,684.

### UNITED STATES v. WHITE et al.

[Taney, 152.] [1]

Circuit Court, D. Maryland. April Term, 1851.

PUBLIC OFFICERS — EXTRA COMPENSATION — NAVY AGENTS — APPOINTMENT AS PURSER OF NAVAL SCHOOL—AUTHORITY OF SECRETARY OF NAVY—DISMISSAL DURING TERM — OFFICE RENT AND CLERK HIRE.

1. Under the acts of congress of March 3, 1839, and August 26, 1842 [5 Stat. 362, 535], an officer with a fixed salary is not entitled to any additional compensation for extra services, unless it is provided for by law, or by the regulation of an officer of the government, authorized by law to make it.

2. The regulation authorized by these acts, is a general one, fixing prospectively, the additional compensation for specific services, within the limits prescribed by law, and graduating it in different places, as he may, in his discretion, deem just and most advisable for the public interest.

3. He is not authorized to give or refuse compensation, at his discretion or pleasure, in each particular instance, after the service is performed.

4. A navy-agent, therefore, is not entitled to compensation beyond his salary, as fixed by law, for any extra services, although such services may be out of the district for which he is appointed, and may, more properly, appertain to the duties of another navy-agent, or even to an officer of the government filling an office of a different character: his salary is the only compensation for services required of him, and performed by him, if he hold no other office or appointment.

5. He is not entitled to an allowance for the hire of a porter, unless such allowance be made by a general regulation of the secretary.

6. Nor is he entitled to an allowance for services rendered as pension-agent.

7. Where the secretary of the navy appointed the navy-agent at Baltimore, acting purser for the naval school at Annapolis: held, that he had the right to make such appointment, if the demands of the public service elsewhere, or any other sufficient cause, put it out of his power to employ a purser regularly appointed; and that the court was bound to presume, in this instance, that the power was exercised under circumstances that justified the appointment, and that such navy-agent would be entitled to the salary allowed by law to pursers.

8. The circumstance that he held the office of navy-agent. at the same time, can make no difference; there is no law which prohibits a person from holding two offices at the same time. In the absence of any legal provision to the contrary, this appointment was valid; although, as a matter of policy, it would be highly exceptionable, in most cases, as a permanent arrangement.

9. The navy-agent is entitled to office rent and clerk hire, and to engage them by the quarter; if he is dismissed from office, before the end of the quarter, he will be allowed for the whole quarter.

This was an action of debt instituted in the circuit court, on the 25th of March, 1850, on the bond of the defendants [Joseph White, John McColgan, and William P. Whyte], given to the United States, on the 14th of February, 1846, to secure the performance, by

1 [Reported by James Mason Campbell, Esq., and here reprinted by permission.]

Joseph White, of the duties of navy-agent, at the city of Baltimore.

The defendant claimed, by way of set-off against the claim of the plaintiff, amounting to $6,407 50, the following sums:

| | |
|---|---:|
| This sum paid Midshipman Reany, by order of chief of bureau of surgery, &c.; voucher on file in fourth auditor's office .................... | $    30 00 |
| This sum as purser at naval school. per the appointment of Hon. George Bancroft ...................... | 5,238 08 |
| This sum as navy pension-agent.... | 1,013 75 |
| This sum charged for bills not belonging to station..................... | 1,149 84 |
| This sum for porter hire........... | 742 50 |
| This sum claimed for balance of office rent and clerk hire.......... | 69 83 |
| | $8,334 00 |

Making a balance in his favor of $1,926.50.

At the trial, the plaintiff prayed the court to instruct the jury: (1) That the defendant, Joseph White, whose emoluments and pay were fixed by law as navy-agent, is not entitled, in this case, to any extra compensation, nor any other allowance, for the disbursement of the public money. (2) That the secretary of the navy had no power, under the laws or regulations of the navy, to appoint the defendant "acting purser;" no such office being authorized by congress. (3) That congress has prohibited any person from acting as purser, who shall not have been first nominated and appointed, by and with the advice and consent of the senate, and given bond; the defendant is, therefore, not entitled to the pay claimed by him as "acting purser," in this case, as he was not appointed by and with the advice and consent of the senate, and never gave a bond, as required by law.

Z. Collins Lee, U. S. Dist. Atty.

D. Stewart and Wm. Pinkney Whyte, for defendants..

TANEY, Circuit Justice. This case must be governed by the acts of congress of 1839 and 1842; the decisions of the supreme court in relation to cases of this description, made previous to the passage of those laws, do not, therefore, apply. Under these acts of congress, an officer with a fixed salary is not entitled to any additional compensation for extra services, unless it is provided for by law, or by the regulation of an officer of the government, authorized by law to make it. The regulation authorized by these acts, we understand to be, a general regulation, fixing prospectively the additional compensation for specified services, within the limits prescribed by law, and graduating it, in different places, as he may, in his discretion, deem just and most advisable for the public interest; he is not authorized to give or refuse compensation, at his discretion or pleasure, in each particular instance, after the service is performed; for that would open the door to favoritism and partiality, which it was the object of these laws to prevent. A navy-

agent, therefore, is not entitled to compensation, beyond his salary, as fixed by law, for any extra services, although such services may be out of the district for which he is appointed, and may more properly appertain to the duties of another navy-agent, or even to an officer of the government filling an office of a different character; his salary is the only compensation for services required of him. and performed by him, if he hold no other office or appointment. The credits and set-offs claimed by the defendant must be tried and determined upon these principles.

1. He is not entitled to extra compensation for disbursing money, under the orders of the navy department, to pay for articles delivered or purchased out of his district; and it makes no difference in this respect whether they be purchased by himself or any other person, under the orders of the department; the item of $1,149.84 must, therefore, be disallowed.

2. Neither is he entitled to the credit of $742.50 for the hire of a porter, while he held the office. The services of such a person in the office of a navy-agent would, indeed, seem to be necessary, and the secretary, we think, had the power, by a general regulation upon the subject, to have made a reasonable allowance to provide one; but as he has not done so, the credit claimed cannot be allowed.

3. Nor can he set off the sum of $810.99 for services as pension-agent. Undoubtedly, an appointment as pension-agent is a distinct one from that of navy-agent; and if by law or regulation, any compensation was allowed to a pension-agent, the defendant would be entitled to it. But the act of April 20, 1836 [5 Stat. 9], in express terms, forbids any compensation to be made for the payment of pensions, without authority of law. It is true that, at that time, the public money was deposited in banks, and the pensions paid by them; but this provision shows that it was the intention of congress that this duty should always be superadded to the duties of some other appointment or officer. The act of February 22, 1840 [5 Stat. 367], authorizes pension-agents to take certain fees from the parties interested, for administering oaths, but gives them nothing more. The first act which authorizes compensation by the public, is the act of February 20. 1847 [9 Stat. 126], and by this act, the secretary of war was authorized to allow a sum not exceeding two per cent. for the payment of pensions; the whole allowance to any one agent not to exceed one thousand dollars in any one year: it does not, however, appear that the secretary of war, or secretary of the interior, who has succeeded to the power of the secretary of war in this respect, has exercised the discretionary power conferred by this law, or made any regulation upon the subject. This item also must, therefore, be disallowed.

4. But he is entitled to set off the sum of $5,328.08 for his salary as acting purser to the naval establishment at Annapolis. The secretary of the navy had a right to appoint a purser ad interim, usually called acting purser, to discharge the duties of purser at this establishment, if the demands of the public service elsewhere, or any other sufficient cause, put it out of his power to employ a purser regularly appointed. The court is bound to presume that the power, in this instance, was exercised under circumstances that justified the appointment of the defendant as acting purser. He performed all the duties of purser at the naval establishment; settled his accounts with the proper officer at Washington as such, and not as navy-agent; and was recognised as acting purser in the reports to congress concerning certain expenditures chargeable to that branch of the service. The act of congress fixes the salary of purser, when not otherwise provided for. at $1,500 a year. As the defendant performed all the duties of the office, and performed them in the name and in the character of purser, he is entitled to the compensation which the law has provided for such services. The circumstance that he held the office of navy-agent at the same time can make no difference; there is no law which prohibits a person from holding two offices at the same time. As a matter of policy, it would certainly be highly exceptionable, in most cases. as a permanent arrangement; but in the absence of any legal provision to the contrary, this appointment was valid. Indeed, it often happens that, in unexpected contingencies, and for temporary purposes, the appointment of a person already in office, to execute the duties of another office, is more convenient and useful to the public, than to bring in a new officer to execute the duty; and if the duties of the second office are performed, and the law has fixed the compensation which it deems just for such services, it cannot be material whether they are rendered by one holding another office or not; provided they are faithfully discharged.

5. He is also entitled to the $69.83 for office rent and clerk hire, for the twenty-five days which intervened between the day of his dismissal and the expiration of his quarter. He was entitled to office rent and clerk hire; and the shortest period for which, according to the usual course of business, he could rent an office. or engage a clerk, was by the quarter; if before the expiration of the time, it was deemed proper to remove him from office, his successor was entitled to the use of the office and the services of the clerk, until the end of the quarter. They were engaged for the use of the officer, and not of the defendant individually; and as he had a right to engage them by the quarter, the expense justly belongs to the office, and ought not to fall upon the individual.

6. He is also clearly entitled to the small item of $30 paid to Midshipman Reany, and the objection to this item has very properly been abandoned by the government.

It is unnecessary to mention the remaining item of the defence, as it has been properly

withdrawn by the defendant. As the alleged error in omitting to credit himself, in his navy-agent's account, with the sum of $561.10, which he transferred to his debit in his purser's account, does not appear on the face of the accounts, and as this credit was not presented and rejected, it is not open to investigation here. If the error exists, it may be discovered by an examination of the accounts at Washington, and without doubt would be readily corrected by the accounting officers.

The jury will find their verdict for the balance due to the government, after deducting the credits and set-off to which the defendant is entitled as hereinbefore stated.